# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**FRANK C. FLEMING,**

    Plaintiff,

v.                                                          **Case No: 5:14-cv-533-Oc-18PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    Defendant.

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). Upon reviewing the record, the memoranda (Docs. 17 & 19), and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**I.    BACKGROUND**

On May 9, 2011, Plaintiff filed applications for DIB and SSI (Tr. 239–51), alleging a disability onset date of January 14, 2010 (Tr. 246, 268–69). The Social Security Administration ("SSA") denied his applications initially (Tr. 73–94) and upon reconsideration (Tr. 95–120). Plaintiff requested a hearing before an Administrative Law Judge (Tr. 8–10) and on May 13, 2013, Administrative Law Judge ("ALJ") Gregory Froehlich held a hearing (Tr. 31–61). Ten days later, ALJ Froehlich issued an unfavorable decision. (Tr. 25–26).

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 14, 2010—the alleged onset date. (Tr. 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, history of fibula/tibia fracture in 2001, major depressive disorder, anxiety disorder, and borderline intellectual functioning. (Tr. 17).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17–18). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with no more than occasional postural activities (climbing, balancing, stooping, bending, kneeling, crouching, or crawling); must avoid concentrated exposure to vibrations; is limited to simple, routine, repetitive tasks where changes in the workplace are infrequent and gradually introduce[d]; and has no[] useful ability to interact with co-workers or the general public.

(Tr. 18). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 24).

At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform—*e.g.*, hand packager and cleaner. (Tr. 25–26). Thus the ALJ found that Plaintiff was not disabled from January 14, 2010, through the date of the decision. (Tr. 26).

On August 14, 2014, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner. (Tr. 1–10). With his administrative remedies exhausted, Plaintiff timely filed the instant appeal. (Doc. 1).

**II.    STANDARD OF REVIEW**

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision.  *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).   Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates

against the Commissioner's decision.  *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  This is clearly a deferential standard.

**III.   DISCUSSION**

Plaintiff raises two arguments on appeal: (1) the ALJ improperly evaluated the medical evidence and (2) the ALJ failed to pose a proper hypothetical.  (Doc. 17).   I find no error.

**A.   The ALJ properly evaluated the medical evidence.**

The ALJ must state with particularity the weight given to different medical opinions, including non-examining state agency physicians, and the reasons therefor.  *Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).   The opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004).   Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips* v. *Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).   With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so.  *Id*. at 1240–41.

At issue here is a residual functional capacity assessment questionnaire completed by Dr. Regina Shabashova (Tr. 1504–06) and a psychological evaluation performed by Dr. Diana Benton (Tr. 1298–03).

**1. *Dr. Shabashova—the treating physician***

Dr. Shabashova, a psychiatrist, treated Plaintiff for over two years.  Though her opinion is largely consistent with the RFC, Plaintiff, in this appeal, points to a single limitation Dr. Shabashova found.  In her *Mental Residual Functional Capacity Assessment* questionnaire, the

doctor checked a box representing that Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was hindered by a "marked restriction"—meaning his function in this area was very seriously limited. (Tr. 1504–06). The ALJ properly discredited this limitation for three reasons.

First, Dr. Shabashova simply checked the questionnaire's box (Tr. 1504–06) without providing any textual explanation or supportive objective medical evidence. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (reasoning that an ALJ may discredit conclusory assertions contained in a questionnaire that consist of only checked boxes and that lack any supporting explanations); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (noting that good cause exists if the treating physician's opinion is conclusory). Plaintiff fails to cite any of Dr. Shabashova's notes, or other clinical or laboratory findings, that are consistent with this limitation. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Second, as the ALJ noted, Dr. Shabashova's opinion was inconsistent with her own treatment notes. Her notes showed that Plaintiff was doing well (Tr. 1040) and his symptoms were improving (Tr. 1463). He consistently took his medication (Tr. 546, 1506, 1521), experienced no adverse side effects (Tr. 1463) and responded positively to the antidepressant drug aripiprazole (Tr. 918).[2] It appears that Dr. Shabashova never changed his dosage of aripiprazole.[3]

---

[2] Aripiprazole is an antidepressant medication and is distributed under the brand name Abilify. *See* ABILIFY, https://www.abilify.com/default.aspx (last visited October 7, 2015).

[3] Dr. Shabashova first saw Plaintiff as early as January of 2011 (Tr. 549) and the doctor performed the assessment at issue in February of 2013 (Tr. 1506).

(Tr. 546–49, 1522). Dr. Shabashova found Plaintiff to be calm and cooperative, fully oriented, and with good eye contact despite being slightly depressed (Tr. 918, 1405, 1522) and assigned him Global Assessment Functioning scores of 62 (Tr. 1405) and 70 (Tr. 1397). The doctor noted that he was even able to live with a roommate despite the inability to be comfortable in a crowd. (Tr. 1521).

Third, the ALJ noted that Dr. Shabashova's opinion is "inconsistent with . . . the other medical evidence of record, which documents an improvement in symptoms with medication and compliance with treatment."[4] (Tr. 23) (citations omitted). For example, Dr. James Byrd, a treating physician, noted that Plaintiff "responded rapidly to aripiprazole" (Tr. 400) and Plaintiff admitted that his symptoms had improved significantly. (Tr. 1379). Also, Dr. Benton, an examining physician, explained in her written report that Plaintiff "appears to have adequate capacity in the areas of understanding and memory, *concentration*, *persistence*, social interaction and adaptation to perform low level, routine, repetitive tasks."[5] (Tr. 1303) (emphasis added).

These reasons, as enumerated by the ALJ in his opinion, constitute sufficient "good cause" to discount the opinion of treating physician Dr. Shabashova. *See Good v. Astrue*, 240 F. App'x 399, 403 (11th Cir. 2007) (finding that the ALJ articulated good cause to discount the opinion of the plaintiff's treating doctor where the ALJ stated that the doctor's opinion was "inconsistent with [the doctor's] own notes" and the doctor's "opinion was inconsistent with the other evidence in the record from [the plaintiff's] own testimony"); *see also Phillips*, 357 F.3d at 1240–41 (finding that the ALJ's determination that the treating physician's opinion should be given little weight was

---

[4] Dr. Shabashova repeatedly noted that Plaintiff experiences an oratory hallucination where he hears his name called. (*See, e.g.*, Tr. 918, 1490). Plaintiff does not, however, assert that these hallucinations impair his ability to work. (*See* Doc. 19, at 11).
[5] As set forth below, the ALJ properly evaluated Dr. Benton's opinion.

supported by substantial evidence where the doctor's assessment conflicted with the doctor's own treatment notes).

### 2. *Dr. Benton—the consulting physician*

Plaintiff argues that though the ALJ accorded Dr. Benton's opinion great weight, the ALJ failed to "address or reject Dr. Benton's opinion that the claimant would need extra time to process and understand instructions and would perform best in a supportive work environment."  (Doc. 17) (internal quotations omitted).   I disagree because the RFC, along with the hypotheticals posed to the Vocational Expert, account for and are consistent with these limitations.

Consistent with Dr. Benton's finding that Plaintiff "may need extra time to understand and process instructions" (Tr. 1303), the RFC limits Plaintiff to simple, routine, repetitive tasks where changes in the workplace are infrequent and gradually introduced.  And consistent with Dr. Benton's finding that, given Plaintiff's history of bullying, Plaintiff "would perform best in a supportive work environment" (Tr. 1303), the RFC limits Plaintiff's interactions with the public and co-workers.   Thus the RFC's limitations, which were posed in hypothetical questions (Tr. 55–56), implicitly account for the extra processing time and supportive work environment.  *Cf. Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (stating that "hypothetical questions adequately account for a claimant's limitations in concentration, persistence, or pace when the questions otherwise *implicitly* account for them") (emphasis added).

## B. The ALJ posed a proper hypothetical.

Plaintiff argues that by failing to give great weight to Dr. Shabashova's opinion, the ALJ also failed to pose a proper hypothetical to the Vocational Expert (VE).  In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   Though the hypothetical question must include all of the claimant's limitations, an ALJ is

not required to include findings in the hypothetical that are not supported by the record. *Crawford*, 363 F.3d at 1161. And the ALJ's RFC assessment need not mirror the opinion of every doctor, nor is the ALJ required to adopt all of the limitations a doctor assessed. *See Castle v. Colvin*, 557 F. App'x, 849, 853 (11th Cir. 2014).

Here, the ALJ's second hypothetical question to the VE included all of the restrictions accepted as credible by the ALJ and included in the RFC.[6] The ALJ was not required to include in the hypothetical the additional limitation Dr. Shabashova found because, as discussed above, the ALJ properly found that the limitation is not supported by substantial evidence. Accordingly, the VE's testimony provides substantial evidence to support that ALJ's conclusion that Plaintiff is not disabled.

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**DONE and ENTERED** in Ocala, Florida on December 17, 2015.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[6] The second hypothetical presented a person who—with Plaintiff's age, education, past work experience—would be limited to: a medium exertional level; only occasional postural activities; no concentrated exposure to vibration; only simple, routine, repetitive tasks; only infrequent and gradually introduced workplace changes; and no "useful" interaction with the general public or coworkers. (Tr. 55–56).